25 C.C.P.A.(Patents)

**In re LANG et al.**

**Patent Appeal No. 3998.**

Court of Customs and Patent Appeals.
June 27, 1938.

George S. Hawke, of Cincinnati, Ohio, pro se, for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

All of appellants' claims in an application for a patent relating to a process for preparing and preserving dietary liquids, such as milk and fruit juices, and the ensuing product of the process, were rejected by the Primary Examiner of the United States Patent Office, and upon appeal the examiner's rejection was affirmed by the Board of Appeals. Appellant has here appealed from the decision of the board.

The rejected claims are numbered 1 to 16 inclusive. In view of the analyzation hereinafter of each of the claims, we think claims 1 and 15 are illustrative of the nature of the subject matter. They read:

"1. The process of preserving dietary liquids comprising extracting the liquids from their original source and sealing same in a container without being contracted with the atmosphere, thereby retaining the natural color and flavor in the liquids free from extraneous bacteriological impurities."

"15. A dietary liquid product obtained by being extracted fresh from its original source and sealed in a container without being at any time contacted with the air, thereby preserving its natural color and flavor free from extraneous bacteriological impurities."

The elements of the claims are aptly set out by the examiner as follows:

"Claims 1 to 14 relate to the process; while claims 15 and 16 relate to the product. The claims are analyzed as follows:

"Claim 1. (a) Extracting in absence of air. (b) Sealing in absence of air.

"Claim 2. Same as claim 1 plus irradiation prior to sealing.

"Claim 3. Same as claim 1, and uses a vacuum to remove the air.

"Claim 4. Same as claim 2 and uses a vacuum to remove the air.

"Claim 5. Same as claim 2 but more specific in the baffle irradiation.

"Claim 6. Same as claim 4 but more specific in the baffle irradiation.

"Claim 7. Irradiates on baffle, cools, and seals. Oxygen is not excluded.

"Claim 8. Much like claims 1 and 3. Removes air during extracting and sealing.

"Claim 9. Drawn solely to irradiating liquids in thin film on baffle plate in a non-oxygen atmosphere.

"Claim 10. More specific than claim 9 in that 'filtered rays' are used. However, note that oxygen is not excluded in this claim.

"Claim 11. Similar to claim 7 but includes extraction and absence of oxygen.

"Claim 12. More specific than claim 9 in that 'filtered' rays are used.

"Claim 13. Specific to milk. Otherwise same as claim 2.

"Claim 14. Specific to milk. Otherwise like 5.

"Claim 15. The product produced by claim 1.

"Claim 16. The product produced by claim 2."

The art relied upon is: Cheney, 1,214,-134, January 30, 1917; Hieber, 1,325,094, December 16, 1919; Keyes, 1,307,500, June 24, 1919; Manning, 1,686,096, October 2, 1928; Chesney, 1,723,603, August 6, 1929; Bills 1,808,760, June 9, 1931; Stephens, 1,883,420, October 18, 1932; Martin, Jr., 1,825,645, September 29, 1931; Agopian (Br.), 168,903, March 6, 1923; Munday (Br.), 269,678, October 25, 1926; Scholl (Br.), 283,472, November 1, 1928.

All the claims were rejected by the examiner as lacking in invention over the art cited which the examiner said shows substantially the same steps used in the same relationship. He correctly stated that "Hieber, Cheney, and Manning show it to be old to treat fruit juices in the absence of air to avoid oxidation and its concomitant flavor and taste spoilage." Cheney extracts the juice and sterilizes the same in such a manner as to avoid oxidation. He evacuates the chamber to remove air. He also seals the juice in containers.

Hieber keeps the juice free from "all possible contact with air." Manning has a similar process.

Stephens extracts the juice in an atmosphere of inert gas (free from air). He uses a vacuum to draw the juice into the processing chamber and bubbles carbon dioxide through the juice and evacuates to remove every trace of residual air. He does this, he states, with the aid of low temperature, so that the juice retains its original flavors and bouquet, as well as vitamins and enzymes. He then packs the juice in containers—all under vacuum.

Martin extracts milk direct from the cow's teats and uses carbon dioxide to remove any air. He does not let the air come into contact with the milk while it is being drawn from the cow. He uses a vacuum and closes the container to avoid air contact. He states that he may also treat beer, syrup, and other liquid substances.

The irradiation feature used alone, as well as in conjunction with a vacuum, is shown in the cited art. Munday first uses a vacuum on liquids and then irradiates them. Scholl removes the air from his entire apparatus and then irradiates the liquid in shallow streams.

The appellant specifies in some of his claims that he irradiates the liquid while it is in a thin film over a baffle plate. Some of his claims also refer to his irradiation as applying "filtered ultra violet rays" while the liquid is passed over a baffle plate.

Scholl also irradiates the liquid in shallow streams after removing the air. Keyes shows the use of a baffle plate for irradiating liquids. Bills shows irradiation, in the absence of air, of oil, such as peanut oil, as well as other liquids. He in addition shows the cooling step after irradiation (irradiation produces heat). Chesney cools during the irradiation. He also removes all air and uses "filtered" rays of a specific wave length.

Concerning appellants' alleged invention the examiner stated: "Applicants have only used known steps for their known values. The extraction, sterilizing, and sealing of the juice, all in the absence of air, is shown in the art. To use ultra-violet rays instead of other sterilizing means is obviously void of invention. * * *"

The board did not discuss all the references but referred to the prior art in the following quotation, which language also specifically discusses the Manning reference:

"The patent to Manning clearly teaches the exclusion of air from fruit juices during extraction and delivery to a closed container but appellants contend that air will necessarily leak into the apparatus and therefore that Manning is unable to perform the operation which he teaches.

"All of the appealed claims are quite broad with respect to the exclusion of air and even if the Manning apparatus will permit some air to reach the juices, we consider that appellants are not entitled to broad claims covering all ways of overcoming the alleged defect in the Manning apparatus.

"The other details we believe are fairly anticipated by the prior art and we do not think they require any discussion."

The examiner also rejected claims 15 and 16 on the ground that they were indefinite due to the process limitations and pointed out that process limitations are undesirable in product claims. He additionally stated that the claims contained negative limitations.

In holding claims unpatentable in an application relating to pure milk, the Board of Appeals in Ex parte Hill, 6 U.S.P.Q. 132,

referring to claims quite similar to claims 15 and 16 involved here, stated: "We do not regard the product claims patentable, since the milk resulting from appellant's process not only has no properties distinguishing it from the pure milk, but is in fact pure milk if appellant's process has accomplished its intended purpose and removed all contaminations. Appellant has not invented any new product. * * *"

The examiner also rejected claim 15 as readable on natural fruit juice. He stated: "* * * The fact that the juice has been 'extracted' does not impart any new characteristic to the juice. The Examiner, moreover, fails to perceive any difference between cocoanut milk sealed in its shell and 'extracted' cocoanut milk sealed in a tin container. Nor, for that matter, does he see any difference in the milk secreted in the mammary glands of an animal and the same milk 'extracted' and confined in a manufactured receptacle. It is thought that the Brogdex decision—American Fruit Growers v. Brogdex, [283 U.S. 1, 51 S.Ct. 328, 75 L.Ed. 801] 404 O.G. 1043—is in point. The sealing of the liquid in a container is purely an aggregative step. Wilson Packing Co. v. Chicago Packing Co., 1882 C.D. 254."

The board did not discuss the grounds of rejection of the examiner except those based on the prior art cited. It did not affirmatively overrule these additional grounds of rejection.

We are in agreement with the decision of the board that all the process claims were properly rejected on the prior art cited. Since the process does not define invention, the product of the process, which in the claims is defined by the process steps, is also not patentable. In re McKee, 95 F. 2d 264, 25 C.C.P.A., Patents, ——.

In referring to the board's approval of the rejection of all the claims, appellants stress the fact that "the excessive number of the references relied upon would seem to indicate invention rather than lack of it. Certainly they show that the process was not obvious."

It is our opinion that in treating liquids, such as are intended to be treated by appellants, it would not amount to invention to arrange the steps in the order defined by the appealed claims, since extracting, irradiating (in the manner called for by the claims), cooling and sealing, all in the absence of air, are taught by the prior art.

The fact that no single reference shows all the steps and that no reference shows the steps in the exact order named does not change the situation, since, in view of the prior art, what appellant has done would be the obvious thing to do in order to produce the claimed results. In re Peddrick, Jr. et al., 48 F.2d 415, 18 C.C.P.A., Patents, 1161.

The decision of the Board of Appeals is affirmed.